UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFREY VOCHASKA,

    Plaintiff,

v.                                              Case No. 1:12-CV-1070

METROPOLITAN LIFE INSURANCE        HON. GORDON J. QUIST
COMPANY,

    Defendant.
_____/

## OPINION

Plaintiff, Jeffrey Vochaska, has sued Defendant, Metropolitan Life Insurance Company (MetLife), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, seeking review of MetLife's February 23, 2012 final decision denying him long-term disability benefits beyond November 14, 2011. Defendant has filed the Administrative Record and the parties have filed cross motions for judgment on the Administrative Record in accordance with the procedures set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). For the reasons set forth below, the Court will grant Vochaska's motion, deny MetLife's motion, and remand to MetLife to review Vochaska's eligibility for benefits.

### I. BACKGROUND

Vochaska was employed by Lane Automotive as a Product Manager, Circle Track Sales. (AR 614-15.) On August 14, 2010, Vochaska ceased working full-time due to a head injury that he received in an automobile accident. (AR 606.) After his injury, Vochaska worked intermittently with a reduced workload. (AR 538.) Vochaska received his last paycheck from Lane Automotive on December 30, 2010. (*Id.*)

As a Product Manager of the circle track product line, Vochaska was responsible for, among other things, developing strategic marketing programs and coordinating the development of sales objectives and strategies. (AR 614-15.) Vochaska's duties included analyzing market data, calling on customers, and responding to product-related information requests. (*Id.*) The position required a knowledge of computers and business software. (*Id.*) The physical demands of the position included sitting four hours per day, standing three hours per day, walking one hour per day, and occasionally lifting up to 50 pounds. (AR 638.) The position required continuous interpersonal interactions and frequent exposure to stressful situations. (*Id.*)

As a Lane Automotive employee, Vochaska was a participant in the Michigan Manufacturers Association Welfare Benefit Plan (the Plan), which provided long-term disability (LTD) benefits through a group disability insurance policy (Policy) issued by MetLife. (AR 1-38.) MetLife administered claims for LTD benefits. The Policy contains the following two-tiered definition of disability for purposes of LTD benefits:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. after the 24 month period, you are unable to earn more than 80% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

(AR 13.)

Vochaska applied for LTD benefits on January 4, 2011. (AR 605-07.) In his application, he stated that the following conditions prevented him from performing the duties of his job: double vision, nausea, hypersensitivity to light and sound, and post-concussion syndrome. (AR 606.) Vochaska included with his application a statement from his treating physician, Dr. David M.

Liscow. (AR 610-12.) Dr. Liscow stated that Vochaska suffered from concussion syndrome and recurrent migraine headaches, and that Vochaska experienced photosensitivity (sensitivity to light), phonosensitivity (sensitivity to sound), confusion, headaches, word-finding difficulties, dizziness, and stuttering. (AR 610.) Dr. Liscow concluded that Vochaska could not return to work full-time, in part because he could not focus on computers or communicate appropriately. (AR 611.)

Upon MetLife's request, Dr. Liscow provided medical records dating back to the date of Vochaska's accident. (AR 541-82.) Dr. Liscow's notes from office visits during that time period indicated that Vochaska was experiencing sensitivity to sound and light, dizziness, short-term memory loss, nausea, and depression. (AR 541, 552.) A CT scan and MRI performed on Vochaska's brain following his accident yielded normal results. (AR 545, 551, 566.)

On February 4, 2011, MetLife approved Vochaska's claim for LTD benefits. (AR 535.) MetLife determined that the date of disability was August 16, 2010, and benefits became payable on November 14, 2010, following the 90 day Elimination Period. (*Id.*)

On February 21, 2011, Dr. Gretchen Barnas, a psychiatrist, submitted a report from a recent visit with Vochaska. (AR 453-458.) The report stated that Vochaska suffered from photophobia and phonophobia, but that those conditions were beginning to improve. (AR 457-58.) Vochaska reported listening to music and watching television, working on a race car, fixing things around the house, welding, and exercising daily. (AR 453. ) Vochaska also told Dr. Barnas that he had been suffering from "white outs," in which his ears would buzz and he would pass out. (AR 455.) Dr. Barnas concluded that Vochaska suffered from post-concussion disorder and had a GAF (Global Assessment of Functioning) sore of 45. (AR 458.)

On April 6, 2011, in response to a request from MetLife, Dr. Liscow submitted a completed questionnaire and updated records from three office visits with Vochaska. (AR 493-510.) In the questionnaire, Dr. Liscow stated that he believed Vochaska was unable to return to work because

3

he could not sustain focus or tolerate a lighted and noisy environment. (AR 494.) In the office notes, Dr. Liscow noted that Vochaska continued to complain of sensitivity to light and noise, short-term memory loss, and nausea. (AR 499, 503, 507.) Vochaska also said that he was exercising, and that his headaches were improving. (AR 499, 503.)

On April 15, 2011, Dr. Sandra Bowker, a neuropsychologist, submitted the results of a neuropsychological examination conducted several months earlier. (AR 472-76.) Although test results indicated "substantial inconsistencies in functioning with severely impaired performance on some tasks and normal performance on other, similar tests," Dr. Bowker stated that test results likely did not represent an accurate assessment of Vochaska's cognitive functioning. (AR 475.) Rather, Dr. Bowker noted that Vochaska might be exaggerating symptoms as a "cry for help." (*Id.*) She went on to explain, however, that she believed Vochaska experienced high levels of anxiety and developed physical symptoms in response. (*Id.*) Dr. Bowker concluded that Vochaska's "history does not support a brain injury that would preclude a return to full-time employment." (AR 475.) Dr. Bowker noted that there might be "psychiatric issues that would prevent return to work," but deferred on that question. (*Id.*)

On April 22, 2011, Dr. Dennis A. Jewett, Vochaska's treating neurologist, submitted a completed questionnaire and narrative report. (AR 459, 467.) Dr. Jewett stated:

> [Vochaska's] neurological examination does not indicate specific areas of neurologic deficit and studies including EEG and MRI brain scan were normal. From the standpoint of restrictions relative to employment, I believe that any possible qualifications in this area would relate to the findings on the neuropsychometric examination [completed by Dr. Bowker.]

(AR 459.) Dr. Jewett did not state whether he believed Vochaska could return to work. (*Id.*)

On June 8, 2011, Dr. Liscow submitted updated records from office visits with Vochaska. (AR 441-51.) In the records, Dr. Liscow noted that Vochaska still suffered from sensitivity to light and sound, although it was improving, and that he could not look at computers. (AR 443.) The

4

notes stated that, on some days, Vochaska was more sensitive to light and sound, and felt like he had the flu and could not leave the house. (*Id.*)

On June 28, 2011, Dr. Liscow submitted a completed questionnaire from MetLife stating that he believed that Vochaska could not work full-time because "he cannot focus, he cannot look at computer screen, he has significant photo and phonophobia, regular headaches, difficulty with social interactions, all get worse with stress at work." (AR 430.)

On September 19, 2011, Dr. Karen M. Meissler, a MetLife clinical psychologist, conducted a review of Vochaska's medical records. (AR 408-11.) Dr. Meissler found that the medical evidence did not support functional limitations due to psychiatric or neurological conditions. (AR 410.) She noted Dr. Barnas's report that Vochaska's mental status was within normal limits, Dr. Bowker's conclusion that tests did not show a brain injury that would preclude full-time work, and Dr. Jewett's report that there was no objective evidence of psychiatric or cognitive impairments to preclude full-time work. (AR 410.) Dr. Meissler noted, however, that she "would not comment on non-psych medical regarding any possible impairments due to light and sound sensitivity or headaches" because it was outside the scope of her specialty. (*Id.*)

On November 13, 2011, MetLife terminated Vochaska's LTD benefits. (AR 390-92.) In a letter informing Vochaska of the denial, MetLife stated that the decision was based on a review of the medical documentation from Dr. Barnas, Dr. Bowker, Dr. Jewett, and Dr. Liscow, as well as the file review performed by Dr. Meissler. (AR 390-91.) MetLife explained its decision as follows:

> Dr. Gretchen Barnas reports on February 21, 2011 that you are improving, your mental status is all within normal limits with no mood disturbance. Neuropsychologist, Dr. Bowker concludes that the results of testing do not support a brain injury that would preclude a return to full time employment. Neurologist, Dr. Dennis Jewett reported on April 22, 2011 that your neurological examination does not indicate specific areas of neurological deficit and studies including EEG and MRI brain scan were normal. In addition, we have not received medical to support your complaints of a physical impairment due to headaches, light and sound sensitivity, and right sided weakness.

(AR 391.)

Thereafter, Vochaska appealed the denial of benefits. (AR 370-80.) In his appeal, Vochaska included updated records from visits with Dr. Liscow, records from physical therapist Kelly Smith, and records from chiropractor Richard Oberheu. (*Id.*) Dr. Liscow's notes stated that Vochaska continued to suffer from sensitivity to light and sound, short-term memory loss, and headaches. (AR 372, 375-76.) Although Vochaska's ability to focus had improved, the notes stated that he could not focus on the screen of the computer. (AR 376.)

On January 18, 2012, Dr. Liscow submitted updated records from an office visit with Vochaska. (AR 360-64.) The notes stated that Vochaska reported that his headaches had continued, his ears were ringing and that, although he was doing better with his eyes, looking at a computer screen made him dizzy. (AR 362.) In his assessment, Dr. Liscow stated:

> [Vochaska] [c]ontinues to have considerable consistency in his subjective symptoms which make it impossible for him to work. On his exam, there is not exaggeration in his symptoms which continues to be a factor in his favor. Though his symptoms remain somewhat subjective, I believe that he is disabled from any job that requires him to work daily, work a full day, work around others, work with computers.

(AR 364.)

As part of the appeal, MetLife referred Vochaska's file to two Independent Physician Consultants (IPCs) – Dr. Kathleen M. Kelley, Board Certified in Internal Medicine, and Dr. Patricia Lowrimore, Board Certified in Psychiatry and Neurology. On January 23, 2012, Dr. Kelley submitted a file review "for the diagnosis of 'neck pain with C5 C6 cervical subluxation.'" (AR 347.) Dr. Kelley spoke with Dr. Liscow, who told her that he had not treated Vochaska for neck pain, and that neck pain was not the source of the disability. (AR 349.) Dr. Kelley concluded that there was not support for "restrictions or limitations for the diagnosis of cervical subluxation." (AR 351.)

Dr. Lowrimore also spoke to Dr. Liscow in the course of her file review. (AR 335.) Dr. Liscow informed her that Vochaska's primary diagnosis was post-concussive disorder and migraine,

6

and that Vochaska could still drive in a limited manner. (*Id.*) After a review of the medical records, Dr. Lowrimore concluded that the medical information did not support functional limitations. (AR 345.) She explained:

> The notes indicate that Mr. Vochaska's depression and anxiety had been well controlled on his medication regimen. He had been compliant. He had improved that way. Thus, it does not appear that there is a psychiatric limitation or impairment.

(*Id.*)

MetLife sent a copy of the IPC reports to Dr. Liscow, who responded with updated records from an office visit with Vochaska, as well as a letter explaining his opinion that Vochaska was disabled. In that letter, Dr. Liscow stated:

> I believe that my medical records, while sparse in the most objective symptoms, support an opinion the opposite of your experts. Jeff has not been able to work after November 2011, and he continues to be disabled, for all the same reasons. Physical work as insignificant as 20 minutes of housework makes him nauseated. He cannot focus at his computer. Phonophobia is still significant enough that he must wear earplugs. He spends much of his day in bed. The data to support this assessment is in his history – not in his MRIs, or in his neurologic exam (which is to his credit – he does not exaggerate on his exam). Clearly his symptoms restrict him from work. He cannot read a page of print, he cannot sit at a computer, he cannot do any work beyond minor physical work. I refer you to my notes for details. . . . I understand the objective data is not significant in terms of supporting Mr. Vochaska's claims, but that is exactly the reason that post-concussion syndromes went unrecognized for decades. Mr. Vochaska is genuinely disabled, and will remain so.

(AR 285.)

On February 13, 2012, MetLife denied Vochaska's appeal. (AR 279-82.) In the letter to Vochaska informing him of the denial, MetLife explained:

> [W]e noted that you reported inability to work due to post concussion syndrome with headaches, neck pain with C5 C6 subluxation, anxiety and depression. The available medical information contained in your file fails to support a physical or psychiatric impairment of a severity that would have precluded you from working.

(AR 281.)

## II. DISCUSSION

### *Standard of Review*

The default standard of review in a claim seeking review of denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989). On the other hand, a court employs a deferential standard of review if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S. Ct. at 956–57; *see also Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) ("When the plan gives the administrator discretionary authority, we apply the highly deferential arbitrary and capricious standard.").

> The Plan contains the following provision regarding Met Life's discretionary authority:
>
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(AR 37.) This language provides a sufficiently clear and express grant of discretionary authority to Met Life to warrant application of the deferential standard of review. The parties agree that the relevant standard of review in this case is arbitrary and capricious.

The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if

they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). Although the standard is highly deferential, it still requires "some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Thus, a court must do more than merely rubber stamp the administrator's decision. *Id.* The decision must be upheld, however, "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (internal quotation marks omitted).

In applying the arbitrary and capricious standard, a court must consider and evaluate potential conflicts of interest that may affect the plan administrator's decision. *See Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd* 554 U.S. 105, 128 S. Ct. 2343 (2008). A potential conflict of interest exists where, as here, the plan administrator reviews and pays claims. *See id.* A conflict of interest does not change the standard of review, but is simply one consideration a court weighs in applying the arbitrary and capricious standard. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006). A conflict of interest carries more than only some weight, however, when there is "significant evidence in the record that the insurer was motivated by self-interest, and the plaintiff bears the burden to show that a significant conflict was present." *Id.*

### MetLife's Denial of Benefits

In reviewing a plan administrator's denial of benefits, "the ultimate issue . . . [for the court] is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002). Under the arbitrary and capricious standard, when a plan administrator provides a reasoned explanation, based on the evidence, for its decision

9

to deny a claim for benefits, a court must defer to the decision "so long as it is rational in light of the plan's provisions." *Frazier*, 725 F.3d at 567 (citing *Miller*, 925 F.2d at 984).

Vochaska argues that MetLife's decision was arbitrary and capricious because Met Life did not grant sufficient weight to the opinion of his treating physician, did not consider the medical conditions that Vochaska listed on his disability application, and did not conduct a physical exam of Vochaska. In essence, Vochaska argues that MetLife did not adequately consider the medical conditions that formed the basis of his claim for disability, and thus did not provide a reasoned explanation for its decision to deny benefits.

As an initial matter, the Court rejects Vochaska's argument that the Supreme Court's decision rejecting the treating physician rule in ERISA cases, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), is overbroad and inconsistent with legislative intent. Even if Vochaska were correct, it would be of no moment. The Supreme Court has spoken, and this Court is bound by that decision. This Court will comply with the dictates of the Supreme Court and the Sixth Circuit Court of Appeals in evaluating MetLife's treatment of Dr. Liscow's opinions.

Although the opinions of a treating physician are not entitled to a presumption of deference, a plan may not arbitrarily disregard such opinions in making a benefits determination. "Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). In this case, Dr. Liscow made clear his opinion that Vochaska could not work full-time due to post-concussion symptoms, such as sensitivity to light and sound, nausea, and headaches. MetLife was not required to accept Dr. Liscow's opinion, but it could not reject it without reason. *See id.*

However, MetLife appears to have ignored Dr. Liscow's opinion, as well as the medical conditions upon which it was based.  Dr. Liscow made clear that he believed Vochaska could not work because of his sensitivity to light and sound, nausea, inability to focus on a computer screen, short-term memory issues, and headaches.  These conditions consistently appeared in the records submitted by Dr. Liscow, and were cited by Vochaska in his application for disability.  Yet MetLife assigned the file review to Dr. Meissler, a psychologist whose expertise would not permit her to comment on "non-psych medical regarding any possible impairments due to light and sound sensitivity or headaches."

In denying Vochaska's claim, MetLife did not discuss the conditions identified by Dr. Liscow, except to state that it had "not received medical to support [Vochaska's] complaints of a physical impairment due to headaches [and] light and sound sensitivity."  However, MetLife had received numerous records and completed questionnaires from Dr. Liscow stating that Vochaska suffered from those conditions.  MetLife's only mention of those records was a statement that it had reviewed them — Metlife did not attempt to explain why the records provided inadequate evidence of the conditions discussed or why it had discredited Dr. Liscow's opinion.  In fact, because Dr. Meissler specifically declined to comment on those issues, it is not clear that MetLife had reason to refuse to credit the evidence from Dr. Liscow.  *See Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (noting that a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician").

In the appeal, MetLife again failed to address the relevant medical conditions.  Although MetLife had two additional IPCs perform file reviews, neither report offers any insight into the conditions upon which Dr. Liscow based his opinion.  Dr. Lowrimore's report addressed only psychiatric issues, and not the conditions identified by Dr. Liscow.  Dr. Kelley's report focused

11

solely on Vochaska's neck pain, even though Dr. Liscow told Dr. Kelley that this issue was not relevant to Dr. Liscow's opinion on disability.  Dr. Kelley did not discuss the conditions described by Dr. Liscow, let alone attempt to explain why she reached a different conclusion from Dr. Liscow.  Dr. Kelley's conclusion that there was no support or disability based on the diagnosis *of cervical subluxation* was simply not relevant in evaluating the opinion of Dr. Liscow.

After viewing the reports from Drs. Kelly and Lowrimore, Dr. Liscow sent a letter to MetLife stating that his opinion regarding disability was premised on Vochaska's sensitivity to light and sound, nausea, and inability to focus.  Nonetheless, MetLife's letter rejecting Vochaska's appeal did not mention those conditions, but rather stated that Vochaska claimed he was unable to work due to headaches, neck pain, anxiety, and depression, and that the medical information did not support this.  Although MetLife mentioned Dr. Liscow's letter, it did not state why it had decided to disregard Dr. Liscow's opinion.  Thus, it appears that MetLife failed to consider the conditions that formed the basis of Dr. Liscow's opinion, and that Vochaska had cited in his application for disability.

Furthermore, that MetLife failed to conduct an in-person examination, and relied solely on file reviews, weighs against a finding that the MetLife's review was full and fair.  There is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005).  However, a court may consider whether a plan conducted a physical exam as one factor in determining whether the plan acted arbitrarily and capriciously. *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005).  Indeed, "the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert*,

409 F.3d at 295. *See also Judge v. Metro. Life Ins.*, 710 F.3d 651, 663 (6th Cir. 2013) ("A plan administrator's decision to conduct a file-only review might raise questions about the benefits determination, particularly where the right to conduct a physical examination is specifically reserved in the plan.") In particular, the Sixth Circuit has frowned on file-only reviews where the reviewer makes a credibility determination or the plan administrator unreasonably credits the file reviewer's opinion over that of the treating physician without any reasoning. *Judge v. Metro. Life. Ins. Co*, 710 F.3d 651, 663 (6th Cir. 2013). *See also Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 555 (6th Cir. 2008). A review is also inadequate when the reviewer simply summarizes the medical records and conclusorily asserts that the claimant can work. *Bennett*, 514 F.3d at 555.

The circumstances of this case represent those in which a file-only review is inadequate. Although MetLife never directly questioned Vochaska's credibility, it implicitly discredited his self-reported symptoms as described by Dr. Liscow. None of the three file reviews discussed these symptoms, except to note that they were not addressed. MetLife simply stated that it had not received medical to support the symptoms, although Dr. Liscow's records consistently discussed them. Thus, although the plan specifically reserved a right to conduct a physical examination, the plan administrator rejected the claimant's self-reported symptoms without conducting such an examination, and without explanation. Under the circumstances, reliance on a file review "raise[s] questions about the thoroughness and accuracy of the benefits determination." *Calvert*, 409 F.3d at 295. *See also Caesar v. Hartford Life & Accident Ins. Co.*, 464 Fed. App'x 431, 436 (6th Cir. 2012) (finding that reliance on a file review rather than a physical examination supported a finding that the insurer's decision was arbitrary and capricious where two IPCs "at least implicitly discredited [the plaintiff's] subjective complaints of pain").

MetLife failed to address the conditions cited by both Vochaska and Dr. Liscow as the basis of his disability. Rather than conducting a physical exam, as was its right, MetLife conducted only a file review. Moreover, the doctors conducting the file reviews failed to discuss or offer conclusions regarding the conditions that formed the basis of Vochaska' claim and Dr. Liscow's opinion regarding disability. Under the circumstances, MetLife did not engage in a principled reasoning process in rejecting Vochaska's claim. Therefore, the Court finds MetLife's denial of Vochaska's benefits to have been arbitrary and capricious.

### *Remedy*

Having determined that MetLife's decision was arbitrary and capricious, the Court next turns to the issue of the appropriate remedy. In a case like this, a court may either award benefits to the claimant or remand to the plan administrator. *Elliot*, 473 F.3d at 621. "Remand to the plan administrator is appropriate where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (internal quotations omitted).

In this case, the IPCs that conducted the review of Vochaska's file failed to consider the medical issues that formed the basis of his claim for disability. None of these doctors attempted to refute, discredit, or otherwise explain why they reached a different opinion than Dr. Liscow. The plan administrator ignored the medical issues that formed the basis of Vochaska's claim and Dr. Liscow's opinion, and instead focused on issues addressed by the file reviewers. The file reviewers and MetLife implicitly discredited Vochaska's complaints without conducting a physical examination.

Under the circumstances, MetLife employed a flawed decision-making process in denying Vochaska's claim. Nonetheless, based upon the current record, the Court cannot say that Vochaska

was clearly entitled to benefits. Thus, the Court will remand to the plan administrator to conduct a full and fair review of Vochaska's claim, addressing the issues presented by Vochaska and Dr. Liscow.

### III. C<small>ONCLUSION</small>

Having reviewed MetLife's decision in light of the administrative record, the Court concludes that MetLife did not make a reasoned decision based on substantial evidence, and that the decision was arbitrary and capricious. The Court will grant judgment in favor of Vochaska, and remand to MetLife for a full and fair review of Vochaska's eligibility for benefits in light of the issues discussed in this Opinion.

An Order consistent with this Opinion will be entered.


Dated: January 21, 2014                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE